IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES PAIGE, JR                                                                      PLAINTIFF

V.                                                      CIVIL ACTION NO.: 3:18-CV-765-SA-RP

METROPOLITAN SECURITY., d/b/a WALDEN
SECURITY et al                                                                     DEFENDANTS

MEMORANDUM OPINION AND ORDER FOR ADDITIONAL BRIEFING

James Paige filed his Complaint [1] on November 1, 2018, alleging that his employer,

Walden Security, discriminated against him in violation of Title VII and Section 1981 when it

failed to hire him as the District Supervisor for the Southern District of Mississippi. Presently

before the Court is Defendant Walden Security's Motion for Summary Judgment [69]. The issues

are fully briefed and ripe for review.

*Factual and Procedural Background*

The United States Marshal Service contracts with a private security company to provide

security for federal buildings and courthouses in the United States. In 2015, the Marshal Service

entered a contract with Metropolitan Security Service, Inc., otherwise known as Walden Security[1],

to provide security at the Federal Courthouses in the Fifth Judicial Circuit. James Paige, the

Plaintiff in this matter, was hired in 2003 as a Court Security Officer ("CSO") and worked until

2015 under contracts of various contractors. Prior to 2003, Paige worked for the Jackson Police

Department from 1974 until 1984 as a patrolman and sergeant, eventually supervising officers in

both the patrol and traffic divisions. Paige also started his own small business, "Quartermaster

---

[1] Prior to 2015, the Marshal Service contracted with various other companies at different times such as USProtect, Inc., Inter-Con Security Systems, Inc., and Akal Security, Inc. At the time of this dispute, the security services were transferring from Akal Security, Inc., to Walden Security.

Vans", in 1980 which eventually grew into a $1.2 million dollar company with 18 employees. He owned and operated this company for 22 years.

Around December of 2015, Paige applied to Walden Security to continue his job as a CSO at the Federal Courthouse in Jackson, Mississippi. Walden Security extended Paige an offer and he accepted. Soon after he began working, he pursued a promotion to become District Supervisor. In Walden Security's organizational structure, each district is supervised by a District Supervisor. The District Supervisor position at issue in this case is responsible for the management and supervision of approximately 60 CSOs providing security at seven different Federal courthouses within the Southern District of Mississippi. In addition to their supervisory role, the District Supervisor is responsible for maintaining and monitoring all duties required by their contract and correct any and all issues that may arise. For years, Gaylen Knupp served as the District Supervisor. But when Walden Security became the new contractor, Knupp notified Walden Security and Brandon Pritchard that he no longer wished to serve as the supervisor. Knupp recommended Prentiss Parker for the position. Without soliciting applications or informing the employees about the opening, Walden Security offered the position to Prentiss Parker. Parker notified Walden Security that he did not want the job after attending a supervisor training. Thereafter, Walden Security posted the job opening on November 13, 2015, seeking applications for the District Supervisor position. The application portal remained open until December 16, 2015. Knupp urged Steve Renfroe to apply. Renfroe submitted his application on November 23, 2015 and was hired one day later on November 24, 2015.

According to Paige, Walden Security did not officially announce Renfroe's hiring to the employees. Instead, he heard this news from Knupp and immediately logged onto the online portal and learned that the application window was still open. Paige testified that he submitted his

application on November 26, 2015, but Walden Security's records indicate that Paige submitted his application on December 1, 2015.[2] Nonetheless, Paige's application was submitted before the application window closed on December 16, 2015. Paige testified that he submitted his application despite hearing from Knupp that the position was filled because he was not sure whether it was legitimate. Paige's application was not reviewed by Walden Security and he was not offered the promotion.

Believing he was discriminated against on the basis of race, Paige filed an EEOC charge of discrimination against the United States Marshal Service.[3] He then filed a Complaint [1] against Walden Security and Attorney General William Barr[4] alleging that he was discriminated against because of his race in violation of Title VII of the Civil Rights Act of 1964 and Section 1981. The Plaintiff later added claims against Gaylen Knupp and Brandon Prichard in their official and individual capacities. *See* First Amended Complaint [34]. Presently before the Court is Walden Security's Motion for Summary Judgment [69], which was filed on February 7, 2020. The issues are fully briefed and ripe for review.

*Legal Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and

[2] The Plaintiff testified that he had no reason to dispute Walden Security's record which indicates that he did not submit his application until December 1, 2015.
[3] This EEOC charge did not include Walden Security and was not attached for the Court's consideration.
[4] When this case was filed, Jefferson B. Sessions, III, the then Attorney General of the United States was named as a party. William Barr is the current Attorney General. Under Federal Rule of Civil Procedure 25, an action does not abate when a public officer who is a party in an official capacity ceases to hold office while the action is pending. Instead, "the officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name. The court may order substitution at any time, but the absence of such an order does not affect the substitution." F.R.C.P. 25. Pursuant to Rule 25 William Barr, the current Attorney General, shall be named as a party in place of Jefferson B. Sessions, III.

3

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

Defendant Walden Security seeks summary judgment in its favor on the Plaintiff's Title VII and Section 1981 claims. In its brief, the Defendant argues that the Title VII claim is procedurally barred because the Plaintiff failed to file an EEOC charge against Walden Security. In addition, the Defendant argues that the Plaintiff cannot establish a prima facie case of discrimination under Section 1981.

4

I.      *Title VII of the Civil Rights Act of 1964*

Walden Security argues that Paige's Title VII claim is procedurally barred because he failed to file an EEOC charge against it.  Paige conceded this point in his response admitting that he incorrectly filed the EEOC charge against the Marshal Service instead of Walden Security. "Title VII directs that a 'charge . . . shall be filed' with the EEOC 'by or on behalf of a person claiming to be aggrieved' within 180 days 'after the alleged unlawful employment practice occur[s].'' *Fort Bend County, Texas v. Davis*, 139 S.Ct. 1843, 204 L. Ed. 2d 116 (2019); *citing* 42 U.S.C. § 2000e-5(b), (e)(1). "Title VII's charge-filing requirement is not a jurisdictional cast." *Id* at 1851. The Supreme Court clarified that while this filing requirement is not jurisdictional, it is mandatory." *Id* at 1852. Therefore, because Paige failed to file a charge against Walden Security, his Title VII claim against Walden cannot survive summary judgment.

II.     *Section 1981*

In addition, Walden Security contends that the Plaintiff cannot establish a *prima facie* case of race discrimination under 42 U.S.C. § 1981. In particular, Walden Security argues that Paige failed to apply for the District Supervisor position before the position had been filled; and, even if he did apply, he was not qualified for the position sought.

Section 1981, "a longstanding civil rights law, first enacted just after the Civil War provides that '[a]ll persons within the jurisdiction of the United States shall have the same right in every State or Territory to make and enforce contracts . . . as enjoyed by white citizens.'" *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008); *citing* 42 U.S.C. § 1981(a). More specifically, Section 1981 states that every person in the United States shall have the same rights as white citizens regarding "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the

contractual relationship." 42 U.S.C. § 1981(b); *see Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006) (citations omitted). These rights, according to Section 1981, "are protected against impairment by nongovernmental discrimination and impairment under color of State law." *See id*.

To survive a motion for summary judgment, a Section 1981[5] Plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). "When an individual infers discrimination from an employer's failure to promote [him], [courts] apply a modified version of the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas*." *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999). In order to meet this burden, "the plaintiff must show (1) that he is a member of a protected class; (2) he was qualified for the position sought; (3) he was rejected for the position; and either (4) the employer awarded the position to a person outside the protected class or the employer continued to seek applicants with his qualifications after rejecting the plaintiff." *Autry v. Fort Bend Indep. Sch. Dist*., 704 F.3d 344, 346–47 (5th Cir. 2013) (*citing Price v. Fed. Exp. Corp*., 283 F.3d 715, 720 (5th Cir. 2002).

A. *Prima Facie Case*

Paige, an African American male, is a member of a protected class. *See* 42 U.S.C.A. § 2000e-2.[6] Second, Paige argues that he applied for a District Supervisor position and was qualified for that position. Walden Security asserts that the Plaintiff cannot establish the second prong of his *prima facie* case because he failed to submit an application before the position was

---

[5] "The elements of the claims under Title VII and 42 U.S.C § 1981 are identical." *Casarez v. Burlington Northern/Santa Fe Co*., 193 F.3d 334, 337 n. 3 (5th Cir.1999). Therefore, the Court evaluates Paige's Section 1981 claim under the burden shifting analysis and evidentiary requirements outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).
[6] Walden Security does not dispute that Paige is a member of a protected class.

filled and because he lacks the requisite qualifications. Generally, a failure to promote claim is barred if the plaintiff failed to apply for the open position. *See Haynes v. Pennzoil Company*, 207 F.3d 296, 301 (5th Cir. 2000) (holding that the plaintiff's failure to apply to the open legal position in the defendant's legal department defeated his effort to establish a prima facie failure to promote case.); *Frensley v. North Mississippi Medical Center, Inc.*, 2010 WL 3655860 at *5 (ND Miss. Sep. 9, 2010) (holding that because the plaintiff failed to apply for the SICU nurse-manager position, summary judgment was proper on her discrimination claim.); *see also Spight v. Tidwell Industries*, 551 F. Supp. 123 (ND Miss. Nov. 23, 1982) (finding that an employee who failed to apply for promotion to foreman failed to meet burden of proving his application would have been futile).[7]

There is no dispute that Paige formally applied for the position. The District Supervisor job opening was posted from November 13, 2015 until December 16, 2015. According to Paige's deposition testimony, he submitted an application online on November 26, 2015. *See* Deposition of James Paige, Jr [69-1]. Walden Security, however, posits a more expansive question—whether submission of an application is required before the position is filled, even if the application window is still open. Walden Security fails to cite to any binding authority supporting a finding that a Plaintiff who applied within the application window but after a position was filled cannot successfully prove that he applied for the position. But in *Texas Department of Community Affairs v. Burdine*, the Supreme Court carefully indicated that "a plaintiff must prove . . . that she applied for an *available* position." 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981)

---

[7] There is an exception to this general rule: "failure to apply for the position does not bar a claim if the plaintiff can show that such an application would have been a futile gesture." *Id.*; *See Teamsters v. United States*, 431 U.S. 324, 363-66, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977); *Claiborne v. Illinois Cent. R. R.*, 583 F.2d 143, 150 (5th Cir. 1978). Making such a claim usually requires a showing that the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination. *Id.* The Plaintiff makes no argument that this exception is applicable on these facts, and the Court has found nothing in the record to indicate that it should be applied.

(emphasis added). On several occasions, the Fifth Circuit and Supreme Court have addressed the availability of a position in the employment context. In *Parez v. Region 20 Education Service Center*, the court held that the nonexistence of an available position is a legitimate reason not to promote. 307 F.3d 318, 325 (5th Cir. 2002). That finding, however, related to the "legitimate, nondiscriminatory reason" analysis, not the *prima facie* case. *See id*. In *Adams v. Groesbeck Independent School Dist*., the Fifth Circuit even went as far to distinguish between a "vacant position" and an "available position" stating that a position is vacant, not available, when an employer chooses not to fund it. 475 F.3d 688, 692 (5th Cir. 2007). This jurisprudence, nonetheless, misses the mark in resolving the issue in this case.

Here, after Knupp declined to continue serving as District Supervisor, Knupp informed Paige that Renfroe would be the new District Supervisor. After learning this on or around November 18, Paige testified that he started his application process for District Supervisor. When asked why he submitted an application despite hearing that the position had been filled, he responded that he did not know Knupp's motivation for telling him and was unsure if it was true. He stated that his suspicion was bolstered when he logged onto the application portal and learned that it was still open. Thus, Paige proceeded to submit an application while the application portal remained open despite rumors that the position had been filled.

Walden Security's basic assertion that Paige failed to timely apply is simply false. In its own briefing, the Defendant stated that the window closed on December 16 and it is clear that Paige submitted an application on November 26. In the Court's view, whether the position was filled at the time Paige applied is of little significance at the *prima facie* stage in the proceedings because the Fifth Circuit or the Supreme Court has not provided any guidance on this issue. As a practical matter, if the availability of a position was dependent upon rumors by employees at the

company, a candidate without the benefit of hearing these rumors would never be able to establish

a *prima facie* case in cases similar to this case. Thus, the Court finds that Paige did apply for an

available position for *prima facie* purposes.

In addition to proving that he applied, Paige must also establish that he was qualified for

the position sought. The qualifications listed on the job posting are listed as follows:

> High school diploma or general education degree (GED). At least
> three calendar years of verifiable experience as a certified law
> enforcement officer; The experience must have included general
> arrest authority; Must possess five years of supervisory and/or
> management experience with projects similar in size and scope of
> this contract.

*See* Job Posting for District Supervisor position [69-4]. Of the requirements listed, Walden

Security argues that Paige does not possess five years of supervisory and/or management

experience with projects similar in size and scope of the contract. Walden Security adds that Paige

has at most four years of experience managing employees. Instead of arguing that he possessed

the requisite qualifications, Paige argues that Walden Security's District Supervisor qualifications

were a sham and that Walden Security moved the goal post when Paige applied. Paige does state

in the "Pertinent Facts and Procedural History" section of his brief that he had more than five years

of management and supervisory experience.

According to Paige's resume, he supervised 50 to 60 officers in the traffic division for the

Jackson Police Department for two years. In addition, he supervised the same number of officers

in the patrol division for two years. Paige's resume also states that he "was over the jail for one

year on the 10:00pm – 6:00am shift." He does not indicate how many employees he supervised

while working at the jail. Paige also does not indicate whether these years were consecutive or

concurrent. However, viewing the facts in the light most favorable to the Plaintiff as the Court

must do at this stage of the proceedings, the Court finds Paige does possess five years of

supervisory or management experience because of his four years supervising officers at the police department and his additional year supervising the jail.

Such experience, per the job posting, must also relate to projects of a similar size and scope as the District Supervisor position. The job summary states that the district supervisor is responsible for the management and supervision of approximately 60 court security officers providing security at seven different Federal courthouses within the Southern District of Mississippi. Other essential responsibilities include making key decisions on behalf of the company, carrying out administrative tasks efficiently, and maintaining all post performance required by the contract.

Paige supervised 50 to 60 officers while working for the Jackson Police Department. In addition, Paige owned and operated a million-dollar small business for 20 plus years while working as a sergeant in the Police Department and as a CSO at the federal courthouse. A comprehensive view of Paige's experience shows that he meets the minimal qualifications listed on the District Supervisor job posting.

The final two prongs are not in dispute: Paige was not offered a promotion and Walden Security hired Steve Renfroe, someone outside the Plaintiff's protected category. Therefore, the Plaintiff has established a *prima facie* case of discrimination.

### B. *Legitimate, Nondiscriminatory Reason*

The burden now shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Burdine*, 450 U.S. at 254–56, 101 S. Ct. 1089. The burden on the employer "is one of production, not persuasion and 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). Walden Security argues

that it did not hire Paige because he did not timely apply for the District Supervisor position. Recognizing the low burden on the Defendant at this stage in the burden-shifting analysis, the Court finds that Walden Security sufficiently articulated a legitimate, nondiscriminatory reason.

C. *Pretext*

If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish pretext. Paige may establish pretext "by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc*., 333 F.3d 572, 578 (*quoting Reeves*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). If he succeeds, the "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Id.* (citation omitted). This is because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation . . . ." *Id.* (*quoting Reeves*, 530 U.S. at 147–48, 120 S.Ct. 2097). Demonstrating pretext is alone sufficient unless "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision," or "the plaintiff create[s] only a weak issue of fact" and there is otherwise "abundant and uncontroverted evidence that no discrimination occurred." *Id*. (*citing Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000).

Paige argues that Walden Security's legitimate, nondiscriminatory reason is pretext because Paige timely applied for the position. As discussed above, the application was posted on the company website on November 13, 2015 and remained there until December 16, 2015. The Defendant's own brief and exhibits show that Paige applied 15 days before the application portal

closed.[8] Thus, Walden Security's statement that Paige did not timely submit an application is simply false.

Although the Defendant's stated reason is proven false, the Fifth Circuit made clear in *Bennett v. Consolidated Gravity Drainage Dist. No. 1*, that "for an employer to be liable for discrimination, the employee must establish not only that the employer's purported basis for termination was pretextual, but also 'that the real reason was intentional discrimination.'" 648 Fed. Appx. 425, 431 (5th Cir. 2016); *citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–17, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Oxford English Dictionary defines "pretext" as "that which is put forward to cover the real purpose or object." *See XII Oxford English Dictionary* 437 (2ed. 1989). The Supreme Court held that ". . . a reason cannot be proved to be 'pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2751, 125 L. Ed. 2d 407 (1993). "The factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct." *Reeves*, 530 U.S. at 146-47, 120 S. Ct. 2097; *see Hicks*, 509 U.S. at 519, 113 S.Ct. 2742 (finding "It is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." (emphasis in original)).

While the Defendant's statement that Paige failed to timely submit an application is false, the above-referenced authorities illustrate that Paige must do more in order to survive summary

---

[8] The Defendant acknowledges this fact in its brief stating ". . . the position was posted for over a month from November 13, 2015, until December 16, 2015." *See* Memorandum in Support [70] of Motion for Summary Judgment. According to the Recruiting Workflow Profile, Walden Security received Paige's application on December 1, 2015 at 1:02 am. [69-6].

judgment. In other words, the falsity of the Defendant's reason, without more, is insufficient. The only other argument asserted by the Plaintiff is that Walden Security's qualification requirements were a sham. Paige contends that after Knupp recommended Prentiss Parker as his replacement, Walden Security offered Parker the position even though he had not submitted an application and did not prove that he was qualified. To that end, Paige argues that the fact that Walden Security never received an application from Parker speaks volumes about its motivations and the importance it placed on qualifications at that time. Paige argues that this conduct exposes Walden Security's discriminatory animus against him. This Court previously noted that "pre-selection, in and of itself, does not establish pretext unless the preselection was motivated by discriminatory animus." *See Pree v. Washington Cty. Bd. of Supervisors*, No. 4:16-CV-122-SA, 2018 WL 522776, at *5 (N.D. Miss. Jan. 23, 2018) (*citing Rowe v. Jewell*, 88 F. Supp. 3d 647, 665 (E.D. La. 2015); *Walsdorf v. Bd. of Comm'rs for the E. Jefferson Levee Dist.*, 857 F.2d 1047, 1051 (5th Cir. 1988); *Hiner v. McHugh*, 546 Fed. Appx. 401, 407 (5th Cir. 2013)).

Beyond Paige's argument about the qualification requirements, Paige has not provided sufficient facts to prove that Walden Security's preselection of Parker was motivated by anything other than a recommendation from Knupp, Parker and Renfroe's predecessor. Absent these facts otherwise proving that the real reason was motivated by discriminatory animus, the Plaintiff has not met his burden of proving intentional discrimination.[9] Thus, summary judgment is proper.

*Additional Legal Issues*

The Court's decision today concludes that there is no Title VII or Section 1981 liability as to Walden Security, the Plaintiff's employer. The other defendants—Brandon Pritchard, Gaylen Knupp, Attorney General William Barr, and the United States—remain as active defendants in this

---

[9] "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S., at 253, 101 S.Ct., at 1093.

case. Although these defendants have not petitioned the Court for dismissal or summary judgment, the Court is considering summary judgment on two issues of material fact that may not be genuinely in dispute. *See* FED. R. CIV. PRO. 56(f).

In particular, the Plaintiff claimed that his two co-workers, Brandon Pritchard and Gaylen Knupp, discriminated against him in violation of Title VII and Section 1981. But it is well-settled law that individuals do not qualify as an employer for the purposes of Title VII and cannot be held civilly liable. *See Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994) (stating that "the definition of the term 'employer' in §2000e(b) does not include individuals who do not otherwise qualify as employers under the statute.").

In addition, the Plaintiff claimed that the U.S. Marshal Service discriminated against him in violation of Title VII and Section 1981. But, as this Court previously held, the U.S. Marshal Service is not the "employer" of a Court Security Officer and the "joint-employer doctrine" is not applicable to governmental subdivisions. *See Crain v. Metropolitan Security Service, Inc.*, 3:17-CV-868-SA Docket [55] (*citing Trevino v. Celanese Corp.*, 701 F.2d 397, 404 n.10 (5th Cir. 1983)).

Pursuant to Rule 56(f), the Court may, after giving notice and a reasonable time to respond, consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. Fed. R. Civ. Pro. 56(f)(3). All parties are hereby on notice of the Court's intent to consider summary judgment on the following issues and claims: (1) the Plaintiff's Title VII and Section 1981 claims against the U.S. Marshal Service through the Attorney General and the United States; (2) the Plaintiff's Title VII and Section 1981 claims against Gaylen Knupp in his individual and official capacities; and (3) the Plaintiff's Title VII and Section 1981 claims against Brandon Pritchard in his individual and official capacities. The parties may file a response

14

within 14 days from the date of this order fully briefing the issues discussed above. Thereafter, the Court will reconsider the remaining claims in light of the parties' briefing.

*Conclusion*

For all the reasons discussed above, Walden Security's Motion for Summary Judgment is GRANTED. All claims against Walden Security are dismissed *with prejudice*. This case is not closed.

SO ORDERED this, the 10th day of June, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE